DECISION
{¶ 1} Relator, Patricia Spriggs, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation and to find she is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings [D1] of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded the commission's analysis of the vocational factors is sufficient and meets the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 3}Relator filed an objection to the magistrate's conclusions of law, asserting: The Magistrate Erred by Finding the Commission Order Minimally or Barely Complied with Noll, When it Failed to Identify the Evidence Relied Upon for the Presumption that Ms. Spriggs Demonstrated the Ability to Learn New Tasks.
 {¶ 4} Relator's objection largely reargues those matters adequately addressed in the magistrate's decision. In support of her objection, relator cites the staff hearing officer's determination that relator "has the ability to learn tasks, which has been demonstrated with her prior employer. The injured worker has been employed with the same employer for 25 years and over the years had to learn new tasks to perform the various assembly line process." (July 26, 2005 Staff Hearing Officer Order, 2.)
 {¶ 5} We agree with the magistrate that the Industrial Commission's order complies with Noll, albeit minimally. We similarly cannot conclude the commission abused its discretion in inferring that relator's 25-year employment on the assembly line with the same employer required her to adapt to new processes. Our inability to find an abuse of discretion is underscored by our lack of access to a transcript of the evidence adduced at a hearing apparently held before the commission's staff hearing officer, and our resulting inability to ascertain to what extent the hearing evidence may support the staff hearing officer's conclusion (staff hearing officer's order noting relator's presence at the hearing and further noting "[t]he injured worker states that she had a problem reading, writing, and performing basic math"). Although relator also challenges the lack of evidence that she has transferable skills, the commission did not determine relator has transferable skills, but rather an ability to learn new skills as evidenced from her longevity with her former employer, coupled with reading ability that allows her to read the newspaper. Accordingly, relator's objection is overruled.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus. Objection overruled; writ denied.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} Relator, Patricia Spriggs, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 8} 1. Relator has sustained two work-related injuries and her claims have been allowed as follows:
 Claim 88-12843 has been allowed for: STRAIN LOWER BACK; MAJOR DEPRESSION; SOMATOFORM PAIN DISORDER; AGGRAVATION OF ANXIETY DISORDER; RIGHT UNLAR NEUROPATHY.
 Claim 88-35549 has been allowed for: TENDONITIS LEFT SHOULDER.
 {¶ 9} 2. Relator filed the instant application for PTD compensation on July 20, 2004. At that time, relator was 64 years old, indicated she had completed the eighth grade in 1956 and that she had not obtained a GED. Relator also indicated that she was currently receiving social security disability benefits. Relator indicated that she was able to write and perform basic math, but that she did not read well. Further, relator indicated that she had participated in a work hardening program in either 1991 or 1992. Relative to her past work experience, relator indicated that she had worked as a waitress in a restaurant and as a factory laborer.
 {¶ 10} 3. Relator attached to her application the April 7, 2004 report of her treating physician, Dr. Gary Meckler, who stated as follows:
 I feel that Patricia Spriggs is now permanently and totally disabled, primarily due to chronic back pain. Also, she has developed a right ulnar neuropathy that reduces the use of that hand. I believe that this neuropathy is due to the use of a cane related to her work-related back injury. I feel that the right ulnar neuropathy should be added to her workers-compensation related diagnoses.
 {¶ 11} 4. Relator was examined by Dr. Richard H. Clary relative to her allowed psychological conditions. In his March 24, 2005 report, Dr. Clary opined that relator's allowed psychiatric conditions had reached maximum medical improvement ("MMI"), and he assessed a 20 percent permanent partial impairment of the whole person relative to those conditions. Dr. Clary indicated that, based solely upon her allowed psychiatric conditions, relator was capable of returning to any of her former positions of employment, or any other sustained remunerative employment for which she was otherwise qualified.
 {¶ 12} 5. Relator was also examined by Dr. Joseph Kearns relative to her allowed physical conditions. Regarding her back conditions, Dr. Kearns noted the following on physical examination:
 She was able to transiently stand on her toes, but then could not walk on her toes or heels because of weakness. She was unsteady, walking with a cane, using a cane to get up and down from the exam table. On range of motion testing using a dual inclinometer technique, she had 25 degrees of true lumbar flexion, 20 extension, 10 right side bending, and 10 left side bending. Her straight leg raising was negative bilateral.
Dr. Kearns noted the following findings upon his physical examination of relator's left shoulder:
 She had tenderness with range of motion of the left shoulder. She had 110 degrees of flexion, 40 extension, 50 adduction, 85 abduction, 30 degrees internal rotation and 80 degrees external rotation. Sulcus sign was negative. Appre-hension sign was negative. She did have pain with impingement testing. There was also pain anterior and posterior with palpation.
Relative to his examination of relator's right hand, Dr. Kearns noted the following upon physical examination:
 There was no wasting into the intrinsic muscles of the left hand. The digit functions were normal. Phalen and Tinel's were negative. She did have two point discrimination intact to 6 mm in the ulnar distribution. There was some palmar erythema.
(The magistrate notes that Dr. Kearns indicated that he was examining relator's left hand; however, it is clear that the ulnar neuropathy pertains to relator's right hand.)
 {¶ 13} 6. In the discussion portion of his report, Dr. Kearns noted that all of relator's allowed physical conditions had reached MMI. Thereafter, Dr. Kearns provides the following impairment ratings for each condition:
 Regarding her right ulnar neuropathy, she did have some symptoms, but her two point discrimination was essentially intact and so a 0% impairment is suggested. Regarding her lumbar strain, she falls into Diagnosis Related Estimates Category II, since there is no verified radiculopathy or structural inclusions noted. As such a 5% whole person impairment is suggested. Regarding her shoulder condition, according to Figures 38 and following, she would have a 5% upper extremity impairment for flexion, 1% for extension, 0% for adduction, 5% for abduction, 4% for internal rotation, and 0% for external rotation. These would add to a 15% upper extremity impairment which, according to Table 3, would correspond to a 9% whole person impairment. The above would combine to a 14% whole person impairment for all allowed conditions.
Dr. Kearns concluded that relator was capable of performing light duty work as such is defined in the Ohio Administrative Code.
 {¶ 14} 7. Relator's application was heard before a staff hearing officer ("SHO") on June 10, 2005, and resulted in an ordering denying the application. The SHO relied upon the medical reports of Drs. Kearns and Clary and concluded that relator retains the residual functional capacity to engage in sustained remunerative employment in a light duty work capacity. The SHO also noted that this was relator's third application for PTD compensation and that the only changes since the 2002 denial of her last application was that her claim had been additionally allowed for right ulnar neuropathy. Thereafter, the SHO analyzed the non-medical vocational factors as follows:
 The Staff Hearing Officer finds that the injured worker retains the physical and psychological capacities to return to unskilled entry-level employment. The Staff Hearing Officer notes that the injured worker has limited reading and writing skills; however, the injured worker has been able to function with the limited education skills all her life. She has the ability to read the paper. Furthermore, the Staff Hearing Officer find that if the injured worker was so worried about this limited ability she could have tried to increase her abilities by taking classes. The injured worker has not done so even though she has been out of the work force for over 15 years. The Staff Hearing Officer also acknowledges that the injured worker's age is a negative factor in seeking employment; however, age by itself is not a reason to grant permanent and total disability. The Staff Hearing Officer further notes that the injured worker has been filing applications for permanent and total disability since 1994. In 1996, the injured worker was 55 years of age. The Staff Hearing Officer finds that the injured worker has the interpersonal skills to maintain employment; she has the ability to learn new tasks, which had been demonstrated with her prior employer. The injured worker had been employed with the same employer for 25 years and over the years had to learn new tasks to perform the various assembly line process.
 Thus, the Staff Hearing Officer finds that the injured worker could become employed if she was so motivated. Her application is denied.
 {¶ 15} 8. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 16} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant non-medical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 17} In this mandamus action, relator's sole argument is that the commission's analysis of the vocational factors was deficient and does not meet the requirements of Noll, and its progeny. Relator contends the commission failed to address her educational deficits and her lack of any transferable skills. While the magistrate does find that the commission's analysis of the non-medical vocational factors could have been more in depth and that a greater explanation could have been provided, the magistrate finds, nevertheless, that the commission's order met the requirements of the law, even if just barely.
 {¶ 18} In its analysis, the commission noted that this was relator's third application for PTD compensation. Even though the commission found that her age of 65 years was a negative factor in seeking reemployment, the commission found that her age was not, in and of itself, a reason to grant her application. It is undisputed that there is no age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. See for example: State ex rel. Pass v. C.S.T. Extraction Co.
(1996), 74 Ohio St.3d 373; State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461; and State ex rel. Bryant v. Indus. Comm. (1996),74 Ohio St.3d 458. Further, in State ex rel. Ehlinger v. Indus. Comm.
(1996), 76 Ohio St.3d 400, the court noted that even an advanced age is not insurmountable when it comes to reemployment and that age must be viewed on a case-by-case basis.
 {¶ 19} After indicating that relator's age, while a negative factor, was not, in and of itself, a reason to grant her application, the commission noted that relator does have limited reading and writing skills. However, the commission noted that relator has been able to function with her limited education her entire life and further, that she has the ability to read the newspaper. It appears to be a reasonable conclusion that the SHO considered her education to be a neutral factor which did not affect her ability to be reemployed one way or the other. Furthermore, although the commission did not state that relator lacked any transferable skills, it is equally clear that the commission did not find that she had any transferable skills as no transferable skills were listed in the commission's order. Relative to her former employment, the commission simply noted that, given the assembly work which she had performed over a 25-year period, relator had exhibited an ability to learn new tasks. Furthermore, the commission noted that relator had interpersonal skills to maintain employment. Relator argues that the commission did not cite the evidence upon which it relied for this conclusion. However, the magistrate notes that relator appeared at the hearing and the commission relied upon the psychological report of Dr. Clary who described relator's level of functioning. In sum, the commission found relator's age and education to be neutral factors and her prior work experience to actually be a somewhat positive factor in that it demonstrated her ability to learn new tasks. Further, the commission pointed out that this was relator's third application for PTD compensation and that, during that time, relator had not done anything to enhance any of her shortcomings. It is not an abuse of discretion for the commission to consider relator's failure to take advantage of opportunities for rehabilitation or retraining. See, for example,State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148;State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250, andState ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414.
 {¶ 20} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion when it denied her application for PTD compensation as this magistrate finds that the commission's analysis of the non-medical disability factors does minimally meet the requirements of Noll and its progeny. As such, relator's request for writ of mandamus should be denied.